IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

JAJUAN DAVIS and
TONY YEAGINS,
     *Plaintiffs.*

v.

Civil Action No. **2:24-cv-1049**

MELINDA ADAMS, SUPERINTENDENT;
ROTH, SECURITY CAPTAIN;
MARTIN, SECURITY LIEUTENANT;
and BOWERS, SECURITY OFFICER,
Sued In Their Individual Capacities.
     *Defendants.*



RECEIVED
JUL 22 2024
CLERK, U.S. DISTRICT COURT
FOR THE WESTERN DISTRICT
OF PENNSYLVANIA

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### 42 U.S.C. § 1983

Filed By: JaJuan Davis (QP4356) &
Tony Yeagins (KT4193), *Pro Se*
SCI-Mercer
801 Butler Pike
Mercer, Pa 16137

# **CONTENTS**

| | | |
|---|---|---|
| I. | Statement of Jurisdiction | 1 |
| II. | Joinder of Parties | 1 |
| III. | Parties To The Complaint | 2 |
| IV. | Administrative Remedies | 3 |
| V. | Statement of Facts | 4 |
| VI. | Injuries Sustained | 5 |
| VII. | Claims | 6 |
| VIII. | Requested Relief | 7 |
| IX. | Subscription | 8 |
| | Appendicies | |

## I. STATEMENT OF JURISDICTION

This is a Civil Rights Complaint filed by JaJuan Davis ("Davis") and Tony Yeagins ("Yeagins"). Both are convicted and incarcerated state prisoners who are alleging Fourteenth Amendment: Procedural Due Process violations and Eighth Amendment: Cruel and Unusual Punishment violations.

Jurisdiction of this Court is invoked pursuant to **28 U.S.C. § 1331.**

## II. JOINDER OF PARTIES
### Fed.R.Civ.P.20(a)(1)(A)and(B)

Both Davis and Yeagins assert their right to relief jointly and severally. Additionally, the questions of law or fact giving rise to this action is common to both Paintiffs. Finally, the Prison Litigation Litigation Reform Act ("PLRA") does not prohibit this joint filing.

1

## III. PARTIES TO THE COMPLAINT

**1).** Plaintiff Davis is a convicted state prisoner in the State Correctional Institution at Mercer ("Mercer") identified as inmate number "QP4356" during the events giving rise to this action.

**2).** Plaintiff Yeagins is a convicted state prisoner in the State Correctional Institution at Mercer identified as inmate number "KT4193" during the events giving rise to this action.

**3).** Defendant Melinda Adams ("Adams") is employed by the Pennsylvania Department of Corrections. She is in the administrative role of Facility Manager at Mercer during the events giving rise to this action. She is being sued in her individual capacity.

**4).** Defendant Captain Roth ("Roth") is employed by the Pennsylvania Department of Corrections. He is in the administrative role of Security Captain at Mercer during the events giving rise to this action. He is being sued in his individual capacity.

**5).** Defendant Lieutenant Martin ("Martin") is employed by the Pennsylvania Department of Corrections. He is in the management role of Security Lieutenant at Mercer during the events giving rise to this action. He is being sued in his individual capacity.

**6).** Defendant Officer Bowers ("Bowers") is employed by the Pennsylvania Department of Corrections. He is a Correctional Officer assigned to the Security Department at Mercer during the events giving rise to this action. He is being sued in his individual capacity.

**7).** All defendants listed have acted under the color of law at all times relevant to this action.

## IV. ADMINISTRATIVE REMEDIES

The Pennsylvania Department Of Corrections Administrative Policy ("DC-ADM") 804, Section 1, A, 7, discourages grievances "directly related to a specific misconduct charge or a specific disciplinary sanction" and they "will not be addressed through the inmate grievance process." Accordingly, Plaintiffs Davis and Yeagins exhausted all available administrative remedies using the appropriate misconduct appeal forms as directed by DC-ADM. *(See Appendix).*

1). 01/28/2024, Davis submitted a DC-141, Part 2(E) Misconduct Hearing Appeal pertaining to the misconduct referenced in this complaint.

   02/07/2024, Yeagins submitted a DC-141, Part 2(E) Misconduct Hearing Appeal pertaining to the misconduct referenced in this complaint.

2). 02/14/2024, Davis' misconduct appeal was denied.

   02/12/2024, Yeagins' misconduct appeal was denied.

3). 02/22/2024, Davis submitted a DC-141, Part 2(E) Misconduct Hearing Appeal To Facility Manager.

   02/16/2024, Yeagins submitted a DC-141, Part 2(E) Misconduct Hearing Appeal To Facility Manager.

4). 02/27/2024, Facility Manager, Adams denied Davis' submitted appeal.

   02/21/2024, Facility Manager, Adams denied Yeagins' submitted appeal.

5). Davis immediately appealed the Facility Manager's denial decision.

   02/26/2024, Yeagins appealed the Facility Manager's denial decision.

6). 04/19/2024, The Department Of Corrections, Chief Hearing Examiner, Zachary Moslak ("Moslak") denied Davis' appeal. This concluded Davis' available administrative remedies.

   03/14/2024, The Department Of Corrections, Chief Hearing Examiner, Moslak denied Yeagins' appeal. This concluded Yeagins' available administrative remedies.

Both Davis and Yeagins have exhausted all available administrative remedies pursuant to **42 U.S.C. § 1997e.**

3

## V. STATEMENT OF FACTS

§ 3:91 Totality Of The Conditions Theory asserts that conditions that, by themselves, may not be Constitutionally offensive, may become so when occurring in combination. The Constitutional totality, in effect, becomes greater than the sum of it's parts. A "mutually enforcing effect that produces the deprivation of a single identifiable human need[...]."

1). On 01/03/2024, a urine sample was collected from Davis by officer Bowers for urinalysis testing.

    On 01/25/2024, a urine sample was collected from Yeagins by officer Bowers for urinalysis testing.

2). Prior to the urine sample collection of Davis and Yeagins, numerous Misconduct Hearing Appeals and inmate complaints were filed with prison authorities at Mercer pertaining to the urinalysis testing results that indicated illicit substance usage in individuals who were subsequently determined to have not used illicit substances. This was determined through both instant result urinalysis testing and tracker urinalysis testing results. *(See Appendix, Affidavits)*.

3). 01/16/2024, Davis was issued a misconduct report in response to the urinary analysis results.

    02/03/2024, Yeagins was issued a misconduct report in response to the urinary analysis results.

4). On 01/18/2024, Davis was given a misconduct hearing related to the urinary sample results. At that hearing, Davis denied using any illicit substances but was ultimately found guilty of the alleged misconduct.

    Similarly, on 02/06/2024, Yeagins was given a misconduct hearing related to the urinary sample results and also denied using any illicit substances but was ultimately found guilty of the alleged misconduct.

5). As a result of being found of his misconduct report on 01/23/2024, Davis was placed in Disciplinary Custody ("DC") for 60 days.

    On 02/26/2024, Yeagins was placed in DC for 30 days. Additionally, Yeagins, who had recently been granted parole, also had his parole decision rescinded. A disciplinary action taken by the Pennsylvania Board Of Probation & Parole in response to the issued misconduct report.

6). Both Davis and Yeagins were placed on a tracker urinalysis monitoring program. Given the substances both Plaintiffs were accused of using, the results of the first tracker urinalysis testing immediately contradicted the previous test administered to both Davis and Yeagins. *(See Appendix: Inmate's Request To Staff Member; To: "Security"; Dated "02-28-24").*

7). In an attempt to obtain copies of the urinalysis testing results and overturn their findings of guilt, Davis and Yeagins submitted multiple Inmate Request To Staff Members. All responses rejected Davis' and Yeagins' request.

8). Despite being made aware of the unreliable testing results through the combination of both verbal and written indications of concern, misconduct hearing appeals from numerous individuals including the immediate plaintiffs, and contradictive tracker urinalysis testing results, prison authorities at Mercer not only consciously disregarded concerns raised but continued to actively use that same urinalysis testing system while issuing misconduct reports and applying DC sanctions to individuals who were issued misconduct reports.

## VI. INJURIES SUSTAINED

1). Reputational damage to both Davis and Yeagins. This greatly impaired Davis' and Yeagins' ability to obtain parole at their earliest opportunity. Yeagins' granted parole decision was ultimately rescinded.

2). Both Davis and Yeagins were place in Disciplinary Custody without justifiable cause.

3). Both davis and Yeagins sustained damage to their relationships with their families and concerned loved ones due to the lack of communication caused by the placement in DC without justifiable cause.

5

## VII. CLAIMS

### A) Fourteenth Amendmend: Procedural Due Process Violation

1. Adams, Roth, Martin, and Bowers deliberately disregarded numerous reports of unreliable urinalysis results and contradictive tracker urinalysis results that indicated false positive urinalysis results to tested individuals.

2. Adams, Roth, Martin, and Bowers recklessly continued to use/allow the use of the same urinalysis testing method over an excessive period of time when they individually and collectively knew these test demonstrated discrepancies, inconsistencies, and/or unreliabilities with providing false positive testing results.

3. Adams, Roth, Martin, and Bowers failed to notify the appropriate authority of the urinalysis testing discrepancies, inconsistencies and/or unreliabilities they knew existed and continued to issue misconduct reports they knew were based on discrepant, inconsistent, and/or unreliable testing results.

4. Adams, Roth, Martin, and Bowers demonstrated and abuse of governmental power by collectively working to denounce, minimize, mischaracterize, and obscure multiple reports by various individuals of false positive urinary analysis results even in the face of individual, validating proof, via contradictive urinary analysis results. Adams, Roth, Martin, and Bowers continued to use discrepant, inconsistent, and/or unreliable testing equipment while failing to take appropriate steps to prevent or remedy any foreseeable damage despite each defendant being capable of performing their obligated duty to resolve or prevent these occurrences.

### B) Eighth Amendment: Substantive Due Process Violation

1. Infliction of atypical and significant hardship when defendants Adams, Roth, Martin, and Bowers demonstrated a collective reckless disregard, deliberate indifference, and gross negligence regarding the systematic and quasi-judicial fairness weighed against the individuals in their custody.

2. Abuse of governmental power when defendants Adams, Roth, Martin, and Bowers knowingly allowed discrepant, inconsistent, and/or unreliable urinalysis testing results to be admitted as evidence to a quasi-judicial prison official resulting in wrongful segregrative confinement.

## VIII. REQUESTED RELIEF

### A). Declaratory Judgment Stating:

**1).** Defendants Adams, Roth, Martin, and Bowers deliberately disregarded numerous reports of unreliable urinalysis results and deliberately disregarded verified contradictive tracker urinalysis results that indicated false positive urinalysis results regarding tested individuals in their custody, violating Fourteenth Amendment: Procedural Due Process protections.

**2).** Defendants Adams, Roth, Martin, and Bowers recklessly continued to use/allow the use of the same urinalysis testing method over an excessive period of time when they were individually and collectivelly aware that these test demonstrated discrepancies, inconsistencies, and/or unreliabilities with providing false positive testing results, violating Fourteenth Amendment: Procedural Due Process protections.

**3).** Defendants Adams, Roth, Martin, and Bowers failed to notify the appropriate authorities of the urinalysis testing discrepancies, inconsistencies, and/or unreliabilities they knew existed and continued to issue misconduct reports they knew were based on discrepant, inconsistent, and/or unreliable testing results, violating Fourteenth Amendment: Procedural Due Process protections.

**4).** Defendants Adams, Roth, Martin, and Bowers demonstrated an abuse of governmental power by collectively working to denounce, minimize, mischaracterize, and obscure multiple reports by various individuals of false positive urinary analysis results even in the face of individual, validating proof, via contradictive urinary analysis results. Adams, Roth, Martin, and Bowers continued to use discrepant, inconsistent, and/or unreliable testing equipment while failing to take appropriate steps to prevent or remedy any foreseeable damage despite each defendant being capable of performing their obligated duty to resolve or prevent these occurrences, violating Fourteenth Amendment: Procedural Due Process protections.

**5).** Defendants Adams, Roth, Martin, and Bowers inflicted atypical and significant hardship by demonstrating a reckless disregard, deliberate indifference, and gross negligence regarding the systematic and quasi-judicial fairness weighed against the individuals in their custody, violating Eighth Amendment: Substantive Due Process protections.

**6).** Defendants Adams, Roth, Martin, and Bowers again demonstrated an abuse of governmental power by knowingly allowing discrepant, inconsistent, and/or unreliable testing results to be admitted as evidence to a quasi-judicial prison official resulting in wrongful segregative confinement to individuals in their custody, violating Eighth Amendment: Substantive Due Process protections.

### B). Punative Damages Awarded In The Following Amounts:

**1).** $40.000. against **each** defendant Adams, Roth, Martin, and Bowers for Eighth Amendment: Substantive Due Process violations.

**2).** $40.000. against **each** defendant Adams, Roth, Martin, and Bowers Fourteenth Amendment: Procedural Due Process violations.

Damages are subject to change as determined by the fact-finder with emphasis being placed on the amount of time spent in segregrated confinement as a result of these violations. Additionally, these damages are intended to prevent the reoccurring of these serious violations and prevent other DOC management and security personnel from engaging in similar behavior.

## IX. SUBSCRIPTION

### Verification of JaJuan Davis

I  *Jajuan Davis* ,declare (certify, verify, or state) that the following is true and correct pursuant to **28 U.S.C. § 1746.**

_____
*(Signature)*

### Verification of Tony Yeagins

I *Tony Yeagins* ,declare (certify, verify, or state) that the following is true and correct pursuant to **28 U.S.C. § 1746.**

_____
*(Signature)*

8

                                          Respectfully Submitted,
                                          /s/Jajuan Davis (QP4356)
                                          /s/Tony Yeagins (KT4193)
                                          SCI-Mercer
                                          801 Butler Pike
                                          Mercer, Pa 16137